# EXHIBIT E

# SUBORDINATION AND STANDSTILL AGREEMENT

**Borrower:** R.A.S.H., LLC  
102 9th Street  
San Antonio, TX 78215

**Lender:** PNC Equipment Finance, LLC  
4355 Emerald St.  
Suite 100  
Boise, ID 83706

THIS SUBORDINATION AND STANDSTILL AGREEMENT, made August 30, 2017, by and between Phipps Anderson Deacon LLP ("Subordinator"), PNC Equipment Finance, LLC ("Lender"), and R.A.S.H., LLC ("Borrower").

    1.    Lender intends to make a loan in the amount of $3,340,000.00 to Borrower ("Lender's Loan"), which loan is intended to be secured by an Aircraft Security Agreement (the "Aircraft Security Agreement") and UCC-1 Financing Statements in the following collateral (the "Collateral"):

    **COLLATERAL.** The word "Collateral" as used in this Agreement means the following described Airframe, Engines and Contracts:

| YEAR MFG | AIRCRAFT MANUFACTURER | MODEL NUMBER | SERIAL NUMBER | FAA REGISTRATION NUMBER |
|---|---|---|---|---|
| 1997 | GULFSTREAM AEROSPACE (aka GULFSTREAM on the International Registry drop down menu) | G-IV (aka Gulfstream G-IV (GIV-SP) on the International Registry drop down menu) | 1305 | N44GV |
| ENGINE MAKE | MODEL NUMBER (S) | SERIAL NUMBER (S) | | |
| ROLLS ROYCE | TAY MK611-8 (aka TAY611 on the International Registry drop down menu) | 16729 | | |
| ROLLS ROYCE | TAY MK611-8 (aka TAY611 on the International Registry drop down menu) | 16730 | | |
| PROPELLER MAKE | MODEL NUMBER (S) | SERIAL NUMBER (S) | | |
| | | | | |

The word "Aircraft" also means and includes without limitation, (a) the Airframe, (b) the Engines, (c) any propellers, and (d) related log books, manuals, diagrams and records.

The word "Airframe" means the Aircraft's airframe, together with any and all parts, appliances, components, instruments, accessories, accessions, attachments, equipment, or avionics (including, without limitation, radio, radar, navigation systems, or other electronic equipment) installed in, appurtenant to, or delivered with or in respect of such airframe.

The word "Engines" means any engines described above together with any other aircraft engines which either now or in the future are installed on, appurtenant to, or delivered with or in respect of the Airframe, together with any and all parts, appliances, components, accessories, accessions, attachments or equipment installed on, appurtenant to, or delivered with or in respect of such engines. The word "Engines" shall also refer to any replacement aircraft engine which, under this Agreement, is required or permitted to be installed upon the Airframe.

The word "Contracts" means any and all agreements, contracts, service contracts, repair contracts, maintenance contracts, including the Engine Maintenance Program, insurance contracts, leases, purchase agreements, bills of sale and assignments, and any other instruments, contracts, or agreements of any kind with respect to the Collateral.

    2.    Subordinator operates and/or manages and/or leases or intends to operate and/or manage and/or lease the Collateral for the Borrower pursuant to a aircraft operating agreement, lease agreement, management agreement or other written or oral agreement (any and all of such agreements, and any interest whatsoever that Subordinator may have in the Collateral by contract, common law or statute, now existing or hereafter created are collectively referred to herein as "Subordinator's Interest").

    3.    In consideration of Lender's agreeing to enter into Lender's Loan and lend money and extend credit to Borrower and in consideration of Lender consenting to Subordinator's Interest, Borrower and Subordinator hereby subordinate any and all claims or liens now or hereafter attaching to the Collateral arising from Subordinator's Interest or otherwise, including but not limited to the personal property and fixtures subject to Subordinator's Interest, to the claims and lien of Lender under its Aircraft



Page 1 of 3

Security Agreement and UCC-1 Financing Statements, and agrees that all claims of Lender against Borrower secured by the Collateral shall be satisfied from the proceeds of collection, application, sale or foreclosure of the Collateral before any payment may be made from the Collateral for the debt or obligations relating to Subordinator's Interest.

4. Lender's lien and security interest with respect to the Collateral shall have priority over any lien and interest of Borrower or Subordinator in connection with Subordinator's Interest with respect to the Collateral, for all purposes, including without limitation, insolvency, receivership, bankruptcy, liquidation or in any other proceeding, whether voluntary or involuntary, by or against the Borrower under any bankruptcy or insolvency law or laws relating to the relief of debtors, to compositions, extensions or readjustments of indebtedness.

5. Borrower and Subordinator further subordinate any and all rights to receive payments under Subordinator's Interest until all amounts owed to Lender by Borrower pursuant to or in connection with Lender's Loan have been paid in full. Provided, however, that Subordinator may make and Borrower may accept payments under Subordinator's Interest so long as Borrower is not in default to Lender pursuant to or in connection with Lender's Loan. If Lender gives Subordinator and Borrower notice in the event of any default by Borrower pursuant to or in connection with Lender's Loan, then: (i) any payment(s) received by Borrower after the occurrence of such a default, whether received before or after the receipt of notice of such default, shall be held in trust by Borrower for the benefit of Lender, and Borrower shall pay and turn over to Lender any such payment(s) to Lender immediately upon Lender's demand; and (ii) so long as Subordinator remains in possession of the Collateral, Subordinator shall pay all sums due under Subordinator's Interest directly to Lender. Lender's receipt of such payments shall not, under any circumstances, constitute either (i) a ratification of Subordinator's Interest by Lender, and Subordinator's Interest shall remain subordinate to Lender's Loan in accordance with the terms of this Agreement, or (ii) a cure of any default of Borrower under Lender's Loan.

6. Lender's Aircraft Security Agreement prohibits any encumbrances subsequent to Lender's without Lender's written consent. Subject to the terms and conditions of this Agreement, Lender hereby consents to Borrower entering into Subordinator's Interest with Subordinator. Lender's consent is limited to only Subordinator's Interest, and is not a consent to (i) any further encumbrances against the Collateral, (ii) any modification of Subordinator's Interest, or (iii) any further extensions of credit to Borrower by Subordinator either under Subordinator's Interest or otherwise. Nothing in this Agreement shall prohibit Lender from modifying, extending, or renewing Lender's Loan in any manner, the modification in any manner or the taking or release in whole or in part of any security therefore, or creation or the modification of the obligations of any endorsers, sureties, guarantors or other parties, or the granting of any other indulgences to the borrowers under Lender's Loan, including, without limitation, increasing the loan amount, increasing the payment requirements, extending the maturity date, or otherwise. This Agreement and the subordination of Subordinator's interest in the Collateral pursuant to this Agreement shall not be in any way affected by the modification, extension of time or renewal of Lender's Loan, the modification in any manner or the taking or release in whole or in part of any security therefore, or creation or the modification of the obligations of any endorsers, sureties, guarantors or other parties, or the granting of any other indulgences to the borrowers under Lender's Loan.

7. Subordinator agrees that (i) in the event of any distribution, division or any application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of the assets of Borrower that includes the Collateral or the proceeds thereof to creditors of the Borrower or upon the indebtedness of the Borrower, for reason of the liquidation, dissolution or winding up of the Borrower or the Borrower's business, or (ii) in the event of any sale, receivership, insolvency or bankruptcy proceeding or assignment for the benefit of creditors, or any proceeding by or against the Borrower for any relief under any bankruptcy or insolvency law or laws relating to the relief of debtors, the adjustment of indebtedness, reorganizations, compositions or extensions, then and in any such event, any payment or distribution of any kind or character or any portion of any payment or distribution or any kind or character, either in cash, property, securities or otherwise that is attributable solely to the Collateral, which shall be payable or deliverable by the Borrower upon or with respect to the Collateral, shall be paid or delivered directly to the Lender for application on Lender's Loan until Lender's Loan shall have been fully paid and satisfied.

8. Subordinator agrees to promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable or that Lender may reasonably request to implement the terms of this Agreement.

9. Subordinator covenants and agrees that it shall not and cannot and is prohibited from pursuing any remedies against Borrower and/or the Collateral until Lender's Loan is paid in full. Subordinator may, with the written consent of Lender and in Lender's sole discretion, cooperate in joint collection efforts against the Collateral. Borrower and Subordinator acknowledge and agree that a breach of this Agreement will cause irreparable harm to Lender and that monetary damages alone may not be an adequate remedy for any breach by Borrower or Subordinator of this Agreement and, accordingly, expressly agrees that, in addition to any other remedies which Lender may have at law or in equity, Lender shall be entitled to injunctive relief for any breach or threatened breach by Borrower or Subordinator. Lender shall not be required to post a bond or other security in connection with such action.

10. Subordinator shall not file or register (or consent to the filing or registration of) any lien, claims, security interest, international interest, contract of sale, or subordination, whether prospective or otherwise (or any amendment, assignment,



Page 2 of 3

modification, supplement, subordination or subrogation thereof) (collectively, an "Encumbrance") pertaining to any of the Collateral, with the FAA or the International Registry without the prior written consent of Lender, which may be withheld in its sole discretion. Upon request by Lender, Subordinator agrees to obtain appropriate releases, terminations, discharges, waivers and/or subordinations (in form and substance as may then be satisfactory to Lender) of any Encumbrance that may affect the Collateral at any time and, at Lender's option cause same to be filed or registered with the FAA or International Registry as applicable.

11. The parties further agree that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Ada County, Idaho, and each party waives any objection which such party may now or hereafter have to the laying of the venue of any such action, suit or proceeding, and irrevocably submits to the jurisdiction of any such court. Nothing contained herein shall prevent or delay Lender from seeking, in any court of competent jurisdiction, specific performance or other equitable remedies in the event of any breach or intended breach by Borrower or Subordinator of their obligations hereunder. This Agreement has been delivered to and accepted by Lender in the State of Idaho. This Agreement shall be governed by and construed in accordance with the laws of the State of Idaho.

12. This Agreement and the obligations of the Borrower and Subordinator and the rights and privileges of the Lender hereunder shall continue until payment in full of all claims of the Lender against the Borrower which are secured by the Collateral or any part thereof.

13. Capitalized terms not otherwise defined herein shall have the meanings given them in the Aircraft Security Agreement.

14. This Agreement and all provisions contained herein shall be binding upon and shall inure to the benefit of the respective successors and assigns of the parties hereto.

15. This Agreement may be executed in any number of counterparts, all of which when taken together shall constitute but a single instrument.

IN WITNESS WHEREOF, the parties hereto have set their hands on the day and year first above written.

**SUBORDINATOR:**

**PHIPPS ANDERSON DEACON LLP**

**MARTIN PHIPPS, PLLC, its Managing Partner**

By: _____
    Martin J. Phipps, Manager of Martin Phipps, PLLC

**BORROWER:**

**R.A.S.H., LLC**

By: _____
    Martin J. Phipps, Manager of R.A.S.H., LLC

**LENDER:**

**PNC EQUIPMENT FINANCE, LLC**

By: _____
    Luci Johnson, Senior Vice President