# EXHIBIT F

## NON-EXCLUSIVE AIRCRAFT LEASE AGREEMENT

This Non-Exclusive Aircraft Lease Agreement (this "*Lease*") is entered into as of __8-31__, 2017 ("*Effective Date*"), by and between R.A.S.H., LLC, a Texas limited liability company ("*Lessor*") and PHIPPS ANDERSON DEACON LLP, a Texas limited liability partnership ("*Lessee*").

**WITNESSETH:**

WHEREAS, title to the Aircraft as described and referred to herein is owned and held by Lessor; and

WHEREAS, Lessee desires to lease from the Lessor, and Lessor desires to lease to Lessee, the Aircraft, without crew, upon and subject to the terms and conditions of this Lease; and

WHEREAS, reference is made herein to the "*FAR*," meaning the Aeronautics Regulations of the Federal Aviation Administration ("*FAA*") and the United States Department of Transportation ("*DOT*"), as codified at Title 14, Parts 1 to 399 of the United States Code of Federal Regulations; and

WHEREAS, Lessee intends to operate the Aircraft under Part 91 of the FAR within the scope of and incidental to its own business; and

WHEREAS, reference is made herein to "*Additional Lessees*," meaning any other person or entity possessing a non-exclusive leasehold interest in the Aircraft; and

WHEREAS, during the Term of this Lease, the Aircraft may be subject to concurrent leases to one (1) or more Additional Lessee(s);

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Lease of Aircraft; Non-Exclusive**

    (A) Subject to the terms and conditions set forth in this Lease, Lessor agrees to lease to Lessee, on a non-exclusive basis, that one certain 1997 Gulfstream IVSP, bearing manufacturer's serial number 1305, and U.S. registration number N44GV together with two (2) Rolls Royce Tay MK611-8 engines bearing manufacturer's serial numbers 16729 and 16730, any and all avionics, engine covers, equipment, instruments, components, and accessories attached thereon and/or appurtenant thereto, and any and all aircraft documents, such aircraft documents including but not be limited to, all logbooks (complete and continuous), flight, maintenance and operations manuals, flight logs, and

any and all other records and paperwork as is normally considered part of the above aircraft (said aircraft, engines, appliances, parts, instruments, appurtenances, accessories, aircraft documents, and other equipment being hereinafter collectively called the "***Aircraft***"). The Lease is a "dry lease"; *i.e.*, while the Aircraft is in Lessee's possession, Lessee shall be solely responsible for providing, employing, and controlling its own flight crew (pilot) and exercising operational and navigational control of the Aircraft.

(B) Lessee and Lessor acknowledge that the Aircraft is leased to Lessee on a non-exclusive basis, and that during the Term the Aircraft may be otherwise subject to lease to Additional Lessees. Lessee acknowledges and agrees that the Aircraft may not be available for use by Lessee during periods when Additional Lessees are using the Aircraft or have reserved it for use. Scheduling use of the Aircraft with Lessor shall be on a first-come, first-served basis. During any period during which an Additional Lessee has scheduled use of the Aircraft, Lessee's leasehold right to possession of the Aircraft under this Lease shall temporarily abate, but all other provisions of this Lease shall nevertheless continue in full force and effect.

## 2. Term, Rent, Payment, and Expenses

(A) The rent ("***Rent***") payable for the Aircraft and Lessee's rent for the Aircraft begins on the date shown in **Exhibit "A."** The term ("***Term***") of this Lease shall commence on the date shown in **Exhibit "A"** and shall continue, unless earlier terminated pursuant to the provisions of this Lease, until and including the date of expiration as set forth in **Exhibit "A."** For purposes of this Lease, "***Term***" shall include only those periods when the Aircraft is in Lessee's possession and control, as opposed to the possession and control of any Additional Lessee(s). If any term is extended or renewed, the word "***Term***" shall refer to all extended or renewal Terms, and all provisions of this Lease shall apply during any such extension or renewal Terms, except as may be specifically provided in writing and signed by both the Lessor and the Lessee.

(B) Lessee shall pay Rent to the Lessor at its address stated in **Exhibit "A"** unless otherwise directed by the Lessor. Rent payments shall be in the amount and at such intervals and due in accordance with the provisions of **Exhibit "A."** The Rent includes an amount to cover the cost of acquiring and maintaining insurance. If the cost of insurance increases, then the amount of Rent is subject to increase in a corresponding amount. The parties hereto agree and acknowledge that Rent paid to Lessor does not include (i) any amount of fees, costs, expenses, or salaries relating to compensation, training, or expenses relating to pilots, or (ii) other expenses set forth in this Lease that are specified as the responsibility of Lessee as opposed to the responsibility of Lessor (including but not limited to costs of Aircraft maintenance, fuel, repairs, taxes, hangar, etc.) (all such expenses in this Section 2(B)(ii) collectively referred to herein as the "***Non-Pilot Expenses***").

2576145.2/SPSA/54821/0103/082517

(C)   The parties acknowledge that upon execution of this Lease, there is no Additional Lessee. To the extent that during the Term of this Lease there is one (1) or more Additional Lessee(s), Lessee agrees to pay its pro rata portion of the Non-Pilot Expenses based on actual usage of the Aircraft during the Term, as determined by Lessor and Lessor's accountant and communicated to Lessee. All such Non-Pilot Expenses shall be paid directly by Lessee to the appropriate third party (for example, taxing authority, hangar, etc.). Initially, Lessee shall be responsible for 100% of such Non-Pilot Expenses based on anticipated usage of the Aircraft, but such percentage may be adjusted by Lessor upon communication to Lessee of such adjustment based on actual usage of the Aircraft.

3.   **Taxes and Fees.** During the Term of this Lease, Lessee shall pay or cause to be paid and reported, all taxes, fees, and assessment due, imposed, assessed, or levied upon the Aircraft (including attributable to the ownership, delivery, leasing and operation thereof) by any domestic or foreign government or taxing authority during or related to the Term of this Lease without limitation all license and registration fees, personal property taxes, excise taxes, gross receipts taxes, franchises, sales and use taxes, stamps, navigation charges or other imposts, duties and charges and any penalties, fines, interest or penalty thereon (collectively, the "*Taxes*").

4.   **Reports.** Lessee will provide Lessor with the following information in writing: (a) notice of any tax or other lien which affects the Aircraft and the full particulars of any tax or lien within ten (10) days after Lessee becomes aware of such tax or lien; (b) location of the Aircraft's primary hangar and any relocation thereof, at least ten (10) days prior to any relocation; (c) a notice of any loss or damage to the Aircraft with full particulars within three (3) days of such occurrence; (d) copies of insurance policies or other evidence of insurance required by this Lease; (e) notice of any accident involving the Aircraft causing personal injury or property damage of any kind within three (3) days of such occurrence; (f) evidence of compliance with FAA airworthiness and advisory circulars of compliance with other maintenance programs; and (g) such other reports and information as the Lessor may reasonably request.

5.   **Operation, Use, Possession, and Risk of Loss.** The possession, use, and operation of the Aircraft shall be at the risk and expense of the Lessee during the Term. Lessee acknowledges that it takes full possession and control of the Aircraft during the Term. Lessee agrees that the Aircraft will be used and operated in compliance with all statutes, laws, ordinances, and standards of directives issued by any governmental agency exercising control or regulation of the Aircraft, and in compliance with any airworthiness certificate, license, or registration relating to the Aircraft issued by any agency controlling or regulation such Aircraft. Lessee will operate the Aircraft predominately in its business and will not use, operate, or permit the Aircraft to be operated: (i) in violation of any United States Export law, control, or regulation; (ii) for any purpose other than transportation of the Lessee; or (iii) for the carriage of persons for hire or the transport of mail or contraband. The Aircraft will be operated by qualified pilots holding at least a valid commercial certificate and an instrument rating and any other certificates, ratings or endorsements appropriate to the Aircraft, purpose of flight or as otherwise

3

directed by the FAR. The Aircraft's pilots shall be directly employed by/contracted for and paid by Lessee, and shall meet all recency of flight requirements and shall meet the rules and regulations established and specified by the insurance policies required by the FAA covering the Aircraft. The initial primary hangar location of the Aircraft shall be as specified in **Exhibit "A"**, Lessee shall be responsible for the hangar charges for the Aircraft during the Term, and the Lessee shall not relocate the primary hangar location to a location outside of the United States of America. Lessor may examine and inspect the Aircraft wherever located, on land and in flight, after giving Lessee reasonable notice.

AT ALL TIMES DURING THE TERM OF THIS LEASE, THE AIRCRAFT SHALL BE LOCATED AND USED SOLELY WITHIN THE UNITED STATES, MEXICO, CENTRAL AND SOUTH AMERICA, ENGLAND AND EUROPE.

Lessee shall never operate or permit the Aircraft to be operated in or over any area of hostilities, any geographic area which is not permitted by the insurance policies covering the Aircraft that are required by this Lease, or in any country or jurisdiction for which exports or transactions are subject to specific restrictions by United States Export or other law or by the United Nations Security Council.

Lessee represents and warrants that it does not own a contract or otherwise have an obligation to operate the Aircraft in any of the following countries: Cuba, Iraq, Iran, Libya, Myanmar, North Korea, China, Syria, Kuwait, Lebanon, or the UAE.

6. **Maintenance.**

   (A) Lessee agrees that during the Term the Aircraft will be maintained in conformity with any and all statutes, laws, ordinances, regulations and standards issued by any governmental agency exercising jurisdiction or control over the maintenance, use, or operation of the Aircraft and in a manner that will not impair any existing warranties concerning the Aircraft or any part thereof.

   (B) During the Term, Lessee shall maintain, inspect, service, overhaul and repair the Aircraft (including each engine) in accordance with all maintenance guides and schedules initially furnished with the Aircraft, including any subsequent amendments, supplements, and manuals issued by the Aircraft manufacturer from time-to-time and all mandatory or otherwise required "Service Bulletins" issued, supplied or made available by or through the Aircraft manufacturer with respect to the Aircraft.

   (C) During the Term, Lessee shall conform the Aircraft to all airworthiness directives, applicable to the Aircraft issued by the FAA or similar regulatory agencies and cause compliance to such directives to be completed through correctional modifications to the Aircraft.

(D) During the Term, Lessee, at Lessee's sole cost and expense, shall provide all maintenance requirements set forth by the Aircraft manufacturer for enforcement of any and all warranties or by the FAA. All procedures required by the FAA shall be undertaken and completed in accordance with the Aircraft manufacturer's recommended procedures and by properly trained and certified maintenance sources and maintenance personnel so the Aircraft and each engine is in as good or better an operating condition as when the Aircraft was leased, ordinary wear and tear excepted, and so as to keep the Aircraft in good operating condition as may be necessary to enable airworthiness certification of such Aircraft.

(E) During the Term, Lessee agrees, at its sole cost and expense, to prominently display "N44GV" as the Aircraft's U.S. registration number, and only this "N" number, and to notify Lessor in writing at least thirty (30) days prior to making any change in the configuration, color or appearance of the Aircraft.

(F) During the Term, Lessee, at Lessee's sole cost and expense, shall be entitled to install accessory equipment or devices on the Aircraft but only so long as such additional accessories or devices are intended for Lessee's use and do not alter or impair the original function or use of the Aircraft and can be readily removed without material damage. Title in any accessories or devices, installed by the Lessee, not removed by Lessee upon return of the Aircraft to Lessor, shall vest in the Lessor upon return of the Aircraft. Lessee shall repair all damage occasioned by or resulting from the installation or the subsequent removal of such accessories or devices. All such installations or removals provided in this Section shall comply with all applicable law or any governmental rules or regulations relating to such accessories and/or devices.

7. **Liens, Sublease, and Assignment.** Lessee shall not sell, transfer, assign, or encumber the Aircraft, any Aircraft engine or any part or component thereof and shall keep and maintain the Aircraft free and clear of all liens and encumbrances. Lessor and any of Lessor's assigns may assign this Lease upon written notification to Lessee.

8. **Loss or Damage to the Aircraft.** Lessee hereby assumes the entire risk of any loss, theft, confiscation, expropriation, damage to or destruction of the Aircraft, any engine or part for any cause or reason whatsoever during the Term. If for any reason, the Aircraft or any engine is worn out, lost, stolen, confiscated, expropriated, requisitioned, irreparably damaged, or unusable during the Term (the "*Casualty Occurrences*"), Lessee shall notify Lessor in writing within three (3) days of such occurrence and Lessee, at Lessee's sole cost and expense, shall replace such engine or Aircraft part in a manner acceptable to the Lessor and shall cause all title to such engine Aircraft part(s) or engine(s) to vest in the Lessor free of liens or encumbrances.

9. **Insurance.** Lessor shall secure and maintain in full force and effect throughout the Term of the Lease insurance against such hazards, losses and risks. All insurance shall name the Lessor and Lessee as insured parties, with the Lessee noted as responsible for operational control of the Aircraft as opposed to Lessor (Lessor is not responsible for operational control of

the Aircraft under this Lease). A copy of the insurance policy binder has been provided to Lessee and is hereby incorporated by reference. All such insurance shall be with an insurance company acceptable to the Lessor at its sole discretion. Without limiting the generality of the former, Lessor shall maintain: (i) liability insurance covering bodily injury and property damage in an amount of not less than Two Hundred and Fifty Million Dollars U.S. ($250,000,000) for any single occurrence; (ii) aircraft physical damage insurance in an amount not less than Five Million Two Hundred and Fifty Thousand Dollars U.S. ($5,250,000); and (iii) confiscation, expropriation, and war risk coverage.

10.    **Return of the Aircraft.**

(A)    At the expiration or earlier termination of this Lease (the "***Return Date***"), Lessee shall return the Aircraft to Lessor at a location within the continental United States of America as Lessor shall direct. Lessee shall also return all aircraft documents, such aircraft documents including but not be limited to, all logbooks (complete and continuous), flight, maintenance and operations manuals, flight logs, and any and all other records and paperwork as is normally considered part of the Aircraft, along with a currently effective FAA airworthiness certificate, any maintenance contracts and warranties.

(B)    Lessor shall arrange an inspection of the Aircraft on the Return Date to determine if the Aircraft has been maintained and returned within the provisions of this Lease. Lessee shall be responsible for the costs of such inspection and shall pay Lessor such costs as additional Rent within ten (10) days from demand. If the inspection indicates the Aircraft, any part or engine has not been maintained and returned in accordance with this Lease, Lessee shall within ten (10) days of demand, as liquidated damages and not as a penalty, pay to Lessor the reasonable, estimated cost of servicing and/or repairing the Aircraft or any part or engine. The reasonable estimated cost shall be determined by Lessor by obtaining two quotes for such work, repair or replacement and taking the average thereof. Lessee shall bear the cost, if any, incurred by Lessor, in obtaining such quotes.

(C)    If Lessee fails to return the Aircraft on the Return Date, Lessor shall be entitled to damages equal to the higher of: (i) the Rent for the Aircraft, pro-rated on a per-diem basis; or (ii) the daily fair market value for the rent of the Aircraft until the Aircraft is returned. Such damages for retention of the Aircraft after the Return Date shall not be interpreted as an extension or reinstatement of the Lease.

(D)    All of Lessor's rights contained in this Section shall survive the expiration or other termination of this Lease.

11.    **Events of Default and Remedies.**

(A) The term *"Event of Default"* whenever used herein shall mean the following events under this Lease: (i) Lessee breaches its obligation to pay Rent or any other sum due or to become due under this Lease and fails to cure such breach within ten (10) days after receiving written notice from Lessor; or (ii) Lessee breaches any insurance obligations under that respective Section or the insurance policy itself, a copy of which has been provided to Lessee and is hereby incorporated by reference; or (iii) Lessee breaches any other obligation, restrictions, or covenant in the Lease and fails to cure that breach within ten (10) days after receiving written notice from Lessor; or (iv) any representation by Lessee to Lessor is untrue in any material respect; or (v) Lessee becomes insolvent to do business in the ordinary course; or (vi) a petition is filed by Lessee under any bankruptcy, insolvency, or similar laws and the petition is not dismissed within forty-five (45) days after the filing date; or (vii) if Lessee breaches or is in default of any other agreement between Lessor and Lessee.

(B) Upon the occurrence of any Event of Default and so long as it shall be continuing, Lessor, at Lessor's option and in its sole discretion, may exercise any one or more of the following remedies: (i) demand that Lessee immediately pay as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the fair market value of the Aircraft, as determined by Lessor; (ii) after written notice of default and opportunity to cure, terminate the Lease and take possession of the Aircraft whenever and wherever it may be found; (iii) proceed in law or in equity to enforce the performance of the Lessee and/or to recover damages for breach of the covenants of this Lease; (iv) sell or otherwise dispose of the Aircraft at private or public sale, in bulk or in parcels, with or without notice and without the Aircraft present at the place of sale;

(C) The foregoing remedies are cumulative and any or all of them may be exercised instead of or in addition to each other.

(D) After default, any Rent or other amounts not paid to Lessor shall bear interest from the date due until paid at the lesser of fifteen percent (15%) per annum or the maximum rate allowed by law. Any provisions of this Section of the Lease that are in conflict with any statute, law, or applicable regulation shall be deemed modified or altered to conform thereto.

12. **Indemnification by Lessee.** LESSEE HEREBY AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS LESSOR, ITS AGENTS, EMPLOYEES, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DAMAGES, PENALTIES, PERSONAL INJURIES (INCLUDING DEATH), CONDUCT, ACTIONS AND SUITS (WHETHER BROUGHT IN GOOD FAITH OR NOT) AND EXPENSES THAT RESULT IN WHOLE OR IN PART FROM (A) LESSEE'S USE, POSSESSION OR CONTROL OF THE AIRCRAFT INCLUDING WITHOUT LIMITATION, LESSEE'S NEGLIGENCE AND/OR WILLFUL MISCONDUCT, OR (B) LESSEE'S BREACH OF THIS LEASE.

2576145.2/SPSA/54821/0103/082517

13. **Indemnification by Lessor.** LESSOR HEREBY AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS LESSEE, ITS AGENTS, EMPLOYEES, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DAMAGES, PENALTIES, PERSONAL INJURIES (INCLUDING DEATH), CONDUCT, ACTIONS AND SUITS (WHETHER BROUGHT IN GOOD FAITH OR NOT) AND EXPENSES THAT RESULT IN WHOLE OR IN PART FROM LESSOR'S BREACH OF THIS LEASE.

14. **Representations and Warranties of Lessee.** Lessee hereby represents and warrants to Lessor as of the date of this Lease:

(A) Lessee (and the undersigned party signing on behalf of Lessee) has the requisite authority and power to enter into this Lease and to do business wherever necessary to carry on its customary business and operations, including the jurisdiction where the primary hangar is located.

(B) Lessee shall remain in compliance with the insurance coverage requirements specified in this Lease and in the policy itself, a copy of which has been provided to Lessee, at all times.

(C) No other approval or consent is required with respect to the entry into or execution by Lessee of the Lease or any documents related thereto.

(D) There are no suits or proceedings pending or threatened before any commission, board or other administrative agency against Lessee that will have a material adverse affect on the ability of the Lessee to perform its obligations under this Lease.

(E) Lessee is and will at all times relevant to this Lease be a validly existing entity and at the time of the signing of this Lease is in good standing under the laws of the State of its organization and will remain in good standing during the Term of this Lease.

(F) A copy of this Lease and a current and valid Aircraft Registration Application, AC Form 8050-1 will be kept on the Aircraft at all times during the Term of this Lease.

(G) Lessee will maintain all logs, books, and records pertaining to the Aircraft.

(H) Lessee will not operate the Aircraft under Part 135 of the FAR without the prior written approval of the Lessor.

15. **Choice of Law.** THIS LEASE SHALL BE CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF TEXAS, AND THE INTERPRETATION, PERFORMANCE, AND ENFORCEMENT OF THIS LEASE SHALL BE SUBMITTED TO THE COURTS OF

8

BEXAR COUNTY, TEXAS, REGARDLESS OF THE PLACE WHERE THE AIRCRAFT IS TO BE USED OR OPERATED, WHERE THE PARTIES RESIDE, OR WHERE THIS LEASE IS SIGNED.

16. **Aircraft is leased AS-IS.** LESSOR, NOT BEING THE MANUFACTURER OR SUPPLIER OF THE AIRCRAFT, ITS ENGINES OR ACCESSORIES, NOR A DEALER IN AIRCRAFT, HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE AIRWORTHINESS, DESIGN, CONSTRUCTION, INSTALLATION OF THE ENGINES, AND/OR ACCESSORIES, DURABILITY, SUITABILITY, FITNESS FOR USE, OR MERCHANTABILITY OF THE AIRCRAFT IN ANY RESPECT, AND AS BETWEEN LESSOR AND LESSEE, THE AIRCRAFT SHALL BE ACCEPTED "AS-IS," "WHERE-IS," AND "WITH ALL FAULTS." LESSOR SHALL NOT BE RESPONSIBLE FOR ANY PATENT OR LATENT DEFECTS IN THE AIRCRAFT OR ANY DAMAGES RESULTING THEREFROM. LESSEE AGREES TO SETTLE ALL CLAIMS LESSEE MAY HAVE RELATING TO SUCH PATENT AND LATENT DEFECTS DIRECTLY WITH THE MANUFACTURERS AND SUPPLIERS AND WILL NOT ASSERT SUCH CLAIMS AGAINST LESSOR.

17. **Compliance with FAR 91.23.** Lessee agrees to be responsible for (1) mailing a copy of this Lease within 24 hours of its execution to the Aircraft Registration Branch, P.O. Box 25724, Oklahoma City, Oklahoma 73125; (2) carrying a copy of this Lease in the Aircraft at all times and making a copy available for review by the FAA or its authorized representatives; and (3) notifying by telephone or in person the FAA Flight Standards district office nearest the airport where the first flight under the Lease will originate (unless otherwise authorized by that office, the notification shall be given at least 48 hours before takeoff of the first flight of the Aircraft under this Lease and inform the FAA of the location of the airport of departure, the departure time, and the registration number of the Aircraft). Lessee agrees to provide evidence to Lessor that Lessee has complied with such requirements. With respect to subsection (3) above, Lessee will provide the name of the FAA representative to whom Lessee provided such notice.

18. **TRUTH-IN-LEASING STATEMENT PURSUANT TO FAR SECTION 91.23:**

(A) THE AIRCRAFT HAS BEEN MAINTAINED AND INSPECTED UNDER FEDERAL AVIATION REGULATION (FAR) PART 91 DURING THE TWELVE (12) MONTH PERIOD PRECEDING THE EXECUTION OF THIS LEASE. THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED IN COMPLIANCE WITH APPLICABLE MAINTENANCE AND INSPECTION REQUIREMENTS OF FAR PART 91 FOR ALL OPERATIONS TO BE CONDUCTED DURING ALL LEASE PERIODS THROUGHOUT THE TERM OF THIS LEASE.

2576145.2/SPSA/54821/0103/082517

(B)   LESSEE, WHOSE NAME AND ADDRESS ARE SET FORTH BELOW, CERTIFIES THAT DURING THE TERM OF THIS LEASE, LESSEE, AND NOT LESSOR, IS CONSIDERED RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THIS LEASE.

(C)   EACH OF LESSOR AND LESSEE CERTIFIES THAT THEY UNDERSTAND THEIR RESPECTIVE RESPONSIBILITIES FOR COMPLIANCE WITH APPLICABLE FEDERAL AVIATION REGULATIONS.

(D)   EACH OF LESSOR AND LESSEE UNDERSTANDS THAT AN EXPLANATION OF THE FACTORS BEARING ON OPERATIONAL CONTROL AND THE PERTINENT FEDERAL AVIATION REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE.

[*Signature page follows*]

IN WITNESS WHEREOF, the undersigned have executed this Lease to be effective as of the Effective Date.

**ADDRESSES:**

102 9th St., Suite 300
San Antonio, TX 78215

**LESSOR:**

R.A.S.H., LLC
a Texas limited liability company

By: _____
Martin J. Phipps, Sole Manager

**LESSEE:**

102 9th St., Suite 300
San Antonio, Texas 78215

PHIPPS ANDERSON DEACON LLP
a Texas limited liability partnership

By: Martin Phipps, PLLC, its managing partner

By: _____
Martin J. Phipps, Sole Manager

## EXHIBIT "A"

1. RENT: Sixty Four Thousand U.S. Dollars ($64,000) per month. Rents for partial months may be prorated on a per-diem basis.

2. PLACE FOR PAYMENT:　R.A.S.H., LLC
   102 9th St., Suite 300
   San Angelo, Texas 78215

3. TERM OF LEASE:　Three (3) years, commencing on __8-31__, 2017, and expiring on __8-30__, 2020, at which time this Lease shall automatically be renewed for additional monthly terms indefinitely, unless either party gives written notice of termination fifteen (15) days prior to the commencement of the next monthly term.

4. PRIMARY HANGAR FOR AIRCRAFT:　Running M Hangar Services
   347 Sandau
   San Antonio, TX 78216