**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, | |
| *Plaintiff,* | Case No. 5:20-cv-00942-XR |
| v. | |
| R.A.S.H., LLC, MARTIN JOHN PHIPPS, and PHIPPS ANDERSON DEACON LLP, | |
| *Defendants.* | |

**MOTION FOR AN ORDER TO SHOW CAUSE**

**TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION:**

NOW COMES, R.A.S.H., LLC, Martin John Phipps and Phipps Anderson Deacon, LLP (collectively referred to as "Defendants"), by and through undersigned counsel and file this motion for an order to show cause and in support of same would show this Honorable Court the following:

From the inception of this litigation, PNC Equipment Finance, LLC's (hereinafter "PNC" or "Plaintiff") only concern was inflating its attorneys' fees. Look no further than PNC's decision to draft and serve a total of two hundred and twenty-one (221) requests for production and ninety (90) combined requests for admissions, in a simple breach of contract case.

To date, Plaintiff purports to have incurred $84,440.28 in attorneys' fees by two different law firms. Buchanan, Ingersoll & Rooney P.C. (hereinafter "BIR P.C."),

a Pittsburgh law firm, and Padfield and Stout, LLP (hereinafter "PSLLP"), a Fort Worth law firm, have spent a combined 302.5 billable hours, through January of 2021, on this case. PNC's inflated attorneys' fees are only rivaled by its alleged expenses. Plaintiff claims that it has incurred $499,319.82 in expenses to date. Despite seeking to hold defendants accountable for these sums, Plaintiff has not provided any ***meaningful*** documentation to support their inflated attorneys' fees and expenses. As set out more fully below, Plaintiff's documents lack the specificity to demonstrate the commercial reasonableness[1] of their expenses. Plaintiff's provided documents raise more questions than answers because the documents are either heavily redacted or provide no meaningful indication of the expenses allegedly incurred.

The Court ordered the parties to mediate Plaintiff's fees and expenses. Prior counsel wanted to attend mediation without more documents from Plantiff. Defendants move the Court to grant this motion and order Plaintiff to show cause why it cannot provide adequate documentation concerning their alleged attorneys' fees and expenses in advance of mediation. Defendants urge the Court to grant this

---

[1] Under article IX of the Uniform Commercial Code (as adopted by Texas), PNC is entitled to recover only those fees and expenses which are *commercially reasonable*:

    (a)    A secured party shall apply or pay over for application the cash proceeds of disposition under Section 9.610 in the following order to:

        (1)    the **reasonable expenses** of retaking, holding, preparing for disposition, processing, and disposing and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party; *See* Tex. Bus. & Com. Code § 9.615 (emphasis added); *See also* Tex. Bus. & Com. Code § 9.610(b) ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.")

motion so that Defendants can utilize the requested documents at mediation. The law authorizes reductions in Plaintiff's fee awards when Plaintiff provides heavily redacted billing records, bills for clerical work, bills for unfiled pleadings, does not charge a reasonable fee, engages in block billing or overstaffs a case. The current state of Plaintiff's records warrants Plaintiff receiving no fee award or a reduction of its fee award. If Defendants are to have any chance at a successful mediation, Defendants require the records that supports Plaintiff's attorneys' fees and expenses.

### Plaintiffs' provided records

Plaintiff produced eight heavily redacted invoices to support their attorney fee contention. Two invoices are from BIR P.C. and the remaining six invoices are from PSLLP. Plaintiff produced various documents and spreadsheets to support some of their expenses.

### Buchanan, Ingersoll & Rooney P.C.'s invoices

Plaintiff produced two invoices from BIR P.C. Both invoices contain heavy redactions, which make it impossible to determine what work was performed.



| 12/14/20 | T. A. Shulsky | 0.70 | |
| 12/16/20 | T. A. Shulsky | 1.80 | |
| 12/16/20 | T. A. Shulsky | 0.80 | |

[2] Mr. Shulsky, the attorney listed on the billing records, describes the role of an attorney as follows:

> "I believe an attorney should be trusted, proactive and instructive. An attorney should help clients avoid problems before they happen. If

---

[2] The full BIR P.C. invoices are attached as Exhibit 1.

problems do arise, ***I believe they should be dealt with swiftly and economically***."[3] (emphasis supplied).

Yet, the billing records belie that contention. Mr. Shulsky has billed 74.70 hours for a total of $31,188.78. This is an hourly rate of $417.52.[4] This is hardly economical for a simple breach of contract case.

## Padfield and Stout, LLP's invoices

Plaintiff produced six invoices from PSLLP. All six invoices contain heavy redactions and do not identify the person making the entries. The PSLLP invoices use initials to identify the person making the time entry.



[5] PSLLP has billed $53,250.50 over approximately two hundred and twenty-eight (228)[6] hours. No matter the class of documents, Plaintiff's production is wholly deficient and does not provide the required information to sustain a fee award, let alone provide defendants with sufficient information to mediate.

## Plaintiff's supporting documents are wholly deficient

"It is a long-recognized principle that federal courts sitting in diversity cases, 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic*

---

[3] https://www.bipc.com/terry-shulsky
[4] November 20, 2020 Invoice No. 12053867 references 60.00 hours and $25,200 in fees. December 31, 2020 Invoice No. 12061215 references 14.70 hours and $5,988.78. Mr. Shulsky has billed 74.70 total hours for $31,188.78. $31,188.78 divided by the total hours worked, 74.70, is $417.52 per hour.
[5] The full invoice is attached as Exhibit 2.
[6] PSLLP's invoice reflect 227.8 hours' worth of alleged billable work. *See* Exhibit 2.

*Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (quoting *Hanna v.* Plumer, 380 U.S. 460, 465 (1965)); *See also Exxon Corp v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). An award of attorneys' fees is governed by state substantive law. *Chevron USA, Inc. v. Aker Maritime Inc.,* 689 F.3d 497, 505 (5th Cir. 2012) (quoting *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002); *See also Northwinds Abatement v. Emplrs Ins.*, 258 F.3d 345, 353 (5th Cir. 2001) (in diversity actions attorneys' fee awards are governed by state law). Under Texas law, a party is only entitled to an award of attorneys' fees when provided by contract or statute. *Symetra Life Ins. Co v. Rapid Settlements, Ltd.,* 775 F.3d 242, 248 (5th Cir. 2015) (citing *Dall. Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992)). Here, the parties contracted[7] for fee and expense responsibility.

### Plaintiff bears the burden of supporting its fee award

It is PNC's burden to produce supporting documentation that allows a court to verify PNC's entitlement to a specific award. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (the "party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours."). To calculate reasonable attorneys' fees

---

[7] The Parties' promissory note permits PNC to recover expenses it incurred in selling the collateral aircraft including reasonable attorney's fees:

"ATTORNEYS' FEES; EXPENSES. Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's **reasonable attorneys' fees** and legal expenses, incurred in connection with the enforcement of this Note, the Aircraft Security Agreement, or the Related Documents. Lender may hire or pay someone else to help enforce this Note, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include the Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court." Emphasis supplied.

under the lodestar method, courts must first establish a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Texas state courts will often consider "the far greater body of federal court experience with lodestar and fee shifting" when assessing attorneys' fees. *El Apple I*, 370 S.W.3d at 765.   Courts may reduce or eliminate hours when the supporting documentation is too vague or incomplete to permit meaningful review. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).

### Redacted billing records

The produced attorney billing records are heavily redacted under the guise of attorney work product. Because of Plaintiff's heavy redactions, Defendants are unable to determine if Plaintiff's attorneys' fees are reasonable. There is no indication of the work performed. Further, if mediation is unfruitful, the parties will require the Court's wisdom to determine the appropriate fee award. The first step in determining a fee award is to determine the number of reasonable hours expended. *La. Power & Light Co.*, 50 F.3d at 324 ("the first step in determining reasonable attorneys' fees is an evaluation of the number of hours reasonably expended."). The *La. Power* court, in footnote 9, described the "basic" information necessary for the district court to determine, if a fee was reasonable stating, "[t]here is no indication of the number of hours expended per task, by whom, for what, and at what rate. Without such basic information, no *Hensley* determinations regarding 'the reasonable number of hours spent on the litigation and a reasonable hourly rate' can be made." *La. Power*, 50 F.3d

at 325 n.9 (citation omitted). Without that "basic" information[8] neither the Court, Defendants nor the mediator will be able to determine whether the hours incurred by Plaintiff were reasonable.

## Work product doctrine and billing records

Texas law governs the attorney-client and work product analysis in this diversity action. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Texas law is clear that, "An opposing party may waive its work-product privilege through offensive use—perhaps by relying on its billing records to contest the reasonableness of opposing counsel's attorney fee **or to recover its own attorney fees**." *In re Nat'l Ins. Co.*, 532 S.W.3d 794, 807 (Tex. 2017) (emphasis added); *See Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461-62 (Tex. 1993). The doctrine of waiver by offensive use prohibits a party from "us[ing] one hand to seek affirmative relief in court and with the other hand lower an iron curtain of silence around the acts of the case." *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985). An offensive use of a privilege occurs when the person asserting the privilege is seeking affirmative relief but uses a privilege to shield relevant information. *See In re Kubosh Bail Bonding*, 522 S.W.3d 75, 89 (Tex. App.—Houston [1st Dist] 2017, no pet.) (recognizing offensive use waiver of attorney work product information); *Occidental Chem. Corp.*

---

[8] Defendants will discuss more fully below, all of Plaintiff's invoices identify the time spent on unknown tasks. All of Plaintiff's invoices for BIC P.C. identify the attorney making the entry, but none of PSLLP's invoices identify the attorney making the entry. Instead, PSLLP's invoices use initials. *See generally* Exhibits 1 and 2.

*v. Banales*, 907 S.W.2d 488, 490 (Tex. 1995) (per curiam) ("[T]he work product privilege may be waived under the offensive use doctrine.").

Plaintiff amended[9] its complaint and moved for declaratory judgement concerning its fees and expenses. *See* Doc. 19. To the extent that Plaintiff uses its redacted fees records offensively—to support an award—that constitutes waiver of the work product privilege and Defendants are entitled to know the substance of the work performed as reflected in the billing records. *See In re Beirne, Maynard & Parsons, L.L.P.*, 260 S.W.229, 231 (Tex. App.—Texarkana 2008, orig. proceeding [mand. denied]) (denying law firm's writ of mandamus when trial court ordered the production of billing records during fee dispute and finding, "Simply put, you cannot deny a party the right to review documents supporting your claim for reimbursement.").

## Reasonable attorneys' fees are required to be reduced for unproductive and unrelated hours

Defendants are permitted to have Plaintiff's attorney's fees reduced for any unproductive or unrelated hours worked, such as hours that resulted in work product that was never filed or served, and for hours spent pursuing claims that were unsuccessful. *Furlow v. Bullzeye Oilfield Servs., LLC*, 5:15-CV-1156-DAE, 2019 U.S. Dist. LEXIS 59436, 2019 WL 1313470, at *6 (W.D. Tex. Jan. 3. 2019) (citing *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538-39 (S.D.N.Y. 2008)). Without knowing what work was performed, which is what Plaintiff chose to redact, Defendants cannot

---

[9] At the inception of this litigation the Court ordered Plaintiff to amend its complaint to clearly allege diversity jurisdiction. *See* Doc. 2. Plaintiff added diversity allegations and a cause of action for attorneys' fees. *See* Doc. 3.

determine if the work performed was redundant and thus requires a reduction in the fee.

In a similar vein, hours resulting from overstaffing a case, even though actually expended, are not reasonable, and should be excluded from an attorney's fees award. *Leroy v. Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Defendants are unable to make this determination without the unredacted billing records, although it appears that at least eight attorneys have time entries on the billing records, which undersigned counsel humbly suggests is evidence of overstaffing because this is a simple breach of contract case.

### Bills for clerical work

Clerical work is not recoverable in an award of attorneys' fees. *See Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001). Even when clerical work is performed by an attorney, it is not recoverable in an attorneys' fee award. *See Black v. SettlePou, P.C.*, 2014 U.S. Dist. LEXIS 97033, at *17 (N.D. Tex. July 14, 2014). Specifically, the records from PSLLP contain entries from "JL," "CVA," "SH," "MS," "OB," "AP," "SF," and "Clerk." The identity of these individuals remains unknown.[10] Because of the heavy redactions, Defendants do not know what tasks these individuals performed. It appears that on December 17, 2020, "Clerk" billed[11] for three tasks. *See* Exhibit 2,

---

[10] Undersigned counsel would hazard a guess that "CVA" is Christopher V. Arisco and "MS" is Mark Stout.

[11] The first entry was for .80 of an hour at a rate of $100. *See* Exhibit 2, p.38. The second entry on the same day, was for 1 hour at the same rate of $100. *Id.* The third entry was for .80 of an hour at a rate of $100. *Id.*

p.38. Undersigned counsel is unable to determine, if there are multiple clerks or the same clerk entering multiple entries. Without the Court granting this motion, Defendants cannot know, if these bills are for impermissible clerical work or impermissible duplicative work. Duplicative or redundant time should be excluded from an attorney's fees award. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 432-34 (1983)). Likewise, Defendants cannot effectively mediate claims about these fees or expenses without the unredacted records.

### Defendants have no meaningful way to determine if Plaintiff's billing entries are excessive, duplicative or inadequately documented entries

Plaintiff must also prove that it exercised "billing judgment." Billing judgement means that the party must document the elimination of excessive, duplicative, unproductive or redundant hours. *See Cty. Of Dimmit v. Helmerich & Payne Int'l Drilling Co.*, No. SA-16-CV-01049-RCL, 2018 U.S. Dist. LEXIS 32631, at 7-8 (W.D. Tex. 2018) (citing *Walker v. United States HUD*, 99 F.3d 761, 769 (5th Cir. 1996)); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006)). "If the applicant's documentation of the hours claimed is vague or incomplete, the district court may reduce or eliminate those hours." *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Defendants acknowledge that Plaintiff has discounted minimal time, but some of the discounted time appears to be for a "Clerk," thus Plaintiff was not entitled to an award for that time irrespective of their discount.

**Unable to determine if reasonable rates were charged**

Concerning PSLLP's invoices, Defendants are unable to determine which attorneys or paralegals made the entries. Reasonable hourly rates are determined based on prevailing rates for attorneys of similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Thus, Defendants require the identity of the attorney or paralegal who made the time entry in order to determine if the rate is reasonable. Defendants cannot effectively mediate without this information.

**Expense documents**

Plaintiff provided Defendants the following summary chart of its expenses.

| Expenses: | |
|---|---:|
| AEROtitle - Registration Files | 30.00 |
| LJ Aviation - Inv. 78058 (Flight to ALN and back) | 10,400.00 |
| LJ Aviation - Inv. 20-00360 (Maintenance inv to West Star) | 178,117.97 |
| LJ Aviation - Inv. 78053 (Pilot and fuel expenses) | 6,442.37 |
| LJ Aviation - Inv. 78046 (August Hangar Rent) | 1,170.00 |
| Mente Group - Appraisal (9/16/20) | 1,725.00 |
| LJ Aviation - Inv. 78287 (Repo Charges) | 25,000.00 |
| LJ Aviation - Inv. 78342 (Universal Fuels, Inc. Lien Charge) | 25,000.00 |
| LJ Aviation - Inv. 78140 (September Hanger Rent) | 7,020.00 |
| LJ Aviation - Inv. 78317 (October Hanger Rent) | 7,020.00 |
| LJ Aviation - Inv. 20-00398 (Work Order #4240) | 4,564.93 |
| AEROtitle - FAA & IR searches | 390.00 |
| Buchanan Ingersoll Rooney | 28,350.00 |
| Padfield & Stout, LLP | 43,670.30 |
| Guardian Jet, LLC Commission (Marketing) | 90,000.00 |
| The Branford Group Commission (Auction House) | 60,000.00 |
| Insured Aircraft Title Service, Inc. (1/2 Escrow Fee) | 2,030.00 |
| LJ Aviation - Inv. 78548 (November Hanger Rent) | 4,680.00 |
| LJ Aviation - Inv. 20-00460 (Work Order #4295) | 1,662.60 |
| LJ Aviation - Inv. 20-00512 (Work Order #4345) | 2,046.65 |
| Total: | 499,319.82 |

Plaintiff takes issue with the lack of documentation supporting the repossession charges and the marketing expenses incurred during the sale of the airplane.

## Plane repossession expense

Plaintiff incurred an expense for $25,000 for "Charges Associated with Repossession" but the invoice does not detail why the cost was $25,000 or what expenses were incurred during the repossession to cause the price to be $25,000.

| N44GV | | Gulfstream G-IV | |
|---|---|---|---|
| Trip Date: | | | |
| | 1.00 | LJ Inv. # 78287 - Charges Associated with Repossession | $25,000.00 |
| | 1.00 | LJ Inv. # 78342 - Release of Fuel Lien | $25,000.00 |

[12]

## Marketing fee

Plaintiff incurred $90,000 worth of marketing expenses in connection with the sale of the aircraft. Plaintiff contracted with Guardian Jet LLC for marketing services. Defendants are unable to determine if this expense was commercially reasonable because Plaintiff has not provided an itemized list of the marketing expenses from Guardian Jet LLC. Thus, Defendants are unable to determine the propriety of the expenses. Defendants urge the Court to enter an order to show cause requiring Plaintiff to provide itemized receipts for the identified expenses.

---

[12] The full invoice is attached hereto as Exhibit 3.

**Removal of Martin John Phipps and
Phipps Anderson Deacon, LLP as parties in this action**

At the December 22, 2020 hearing, PNC admitted there is an undisputed excess of nearly $500,000 from the sale of the disputed asset. The Court ordered disbursal of $300,000 of the excess funds. PNC recovered the asset, and the alleged debt has been satisfied. There is simply no reason for Martin John Phipps and Phipps Anderson Deacon, LLP to remain as parties in this action. Defendants pray that the Court will order Plaintiff to show cause why Martin John Phipps and Phipps Anderson Deacon, LLP.

**Conclusion**

Courts universally have reduced Plaintiff's attorneys' fees when Plaintiff provides heavily redacted billing records, bills for clerical work, bills for unfiled pleadings, does not charge a reasonable fee, engages in block billing or overstaffs a case. Defendants urge the Court to grant this motion and order Plaintiff to show cause to support their fees and expenses. This motion serves a dual purpose of allowing the parties to effectively mediate Plaintiff's claimed expenses and attorney's fees. Defendants cannot effectively mediate Plaintiff's claimed expenses and attorneys' fees without the underlying documents to support to them.

WHERFORE PREMISES CONSIDERED, Defendants respectfully pray that the Court grant this motion and order the Plaintiffs to show cause why Plaintiffs cannot provide adequate documentation concerning their alleged attorneys' fees and expenses.

Respectfully Submitted,

/s/*Abasi D. Major*
Abasi D. Major
State Bar No. 24096504

Phipps Deacon Purnell, PLLC
The Phipps
102 9th Street
San Antonio, Texas 78215
amajor@phippsmayes.com
Telephone: 210-340-9877
Fax: 210-340-9899

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on parties of record *via* the Court's ECF filing system on the 5th day of February, 2021.

Mark W. Stout
Christopher V. Arisco
Padfield & Stout, LLP
420 Throckmorton, Suite 1210
Fort Worth, Texas 76102
mstout@padfieldstout.com
carisco@padfieldstout.com

/s/*Abasi D. Major*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Mr. Mark W. Stout, counsel for defendants and he is opposed to this motion.

/s/*Abasi D. Major*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, | |
| *Plaintiff,* | Case No. 5:20-cv-00942-XR |
| v. | |
| R.A.S.H., LLC, MARTIN JOHN PHIPPS, and PHIPPS ANDERSON DEACON LLP, | |
| *Defendants.* | |

## ORDER ON DEFENDANTS" MOTION FOR AN ORDER TO SHOW CAUSE

On this _____ day of _____, 2021, came to be considered Defendants' motion for an order to show cause and the Court having considered same finds that it is:

(GRANTED)          (DENIED)

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE